OPINION
Appellant, Scott Anderson, and appellee, Donna Anderson, were married on August 6, 1988. They had two children as issue to the marriage: Sebastian, born November 26, 1993; and John, born March 2, 1997. Appellant filed a complaint for divorce in the Geauga County Court of Common Pleas on December 19, 1997. On March 3, 4, and 5, 1999, a hearing on the matter of child custody was held before a magistrate.
At the hearing, it was determined that, on May 31, 1997, appellee left the marital home in Cleveland Heights, Ohio with Sebastian after some sort of dispute with appellant. The next day, she returned with the Cleveland Heights police to pick up John and filed a complaint for domestic violence against appellant. Appellant later pleaded guilty to disorderly conduct as a result of the incident. After leaving the Cleveland Heights house, she moved in with her parents in Chardon, Ohio and later moved in with her boyfriend, Will Douglas, in Burton.
Both sides presented evidence regarding their own suitability as a parent and the inadequacy of the other. Appellant called Pete and Ginny DiFranco, his friends, who testified that they had seen appellee drink alcohol while she was pregnant with John. They both testified that appellant was a loving and caring father. Ginny testified that appellee confided in her that she did not want the children and that the children were too much for her. Appellant called the children's pediatrician, who testified that appellant would bring the kids for their doctors appointments, the children were clean, and appellant was concerned for their health. Appellant's mother testified that appellee had once attempted suicide. Sergeant Ross Nichols, of the Geauga County Sheriff's Office, testified that he had investigated a complaint initiated by appellant that appellee's live-in boyfriend, Will Douglas, had assaulted Sebastian by hitting his head into a car window. This matter was investigated by the Geauga County Department of Human Services and no further action was taken.
Appellant testified that appellee left the marital home after he found her passed out in bed with Will Douglas, while Sebastian was in bed with them and John was crying with a wet diaper. He maintained that appellee "dumped" the children on him and told him that she did not want them and that her main priorities were Will Douglas and herself. Although the children were at one time behind on their immunization shots, appellant stated that he was, at first, inexperienced with children and overwhelmed, but they were now on schedule for their shots and that he was now complying with all recommendations by the pediatrician. At the time of the hearing, he was unemployed and had been for many months, but would be starting a job soon. Appellee's counsel elicited on cross-examination that appellant did not discuss matters of the children's health and appropriate activities with appellee.
The guardian ad litem testified that she believed that any drinking problem appellee ever had was in the past. She thought that appellant had an improper attitude toward appellee. Although she thought appellant was a fit parent, she recommended that appellee be designated the residential parent. She testified that appellant had a larger house in Cleveland Heights, but that she noticed it smelled like mildew when she visited it. From speaking with Sebastian, she learned that appellant often yelled, which would cause Sebastian to hide under his bed. According to the guardian ad litem, the house where appellee and Will Douglas lived in Burton was very small, but suitable. She found no evidence to substantiate that Will Douglas had assaulted Sebastian.
Appellee presented testimony from her sisters and mother, who stated that: Sebastian had lost a substantial amount of weight since living with appellant; the children always seemed to be sick; Sebastian had flea bites on one occasion; Sebastian and John had frequent temper tantrums and used profane language; appellant often used profane language in front of the children; and, appellant was hostile toward appellee and her relatives. They all testified that appellee was a good mother and that appellant, although he loved the children, was a poor father. Appellee testified that appellant was abusive toward her and contradicted the accusations appellant made against her and Will.
On April 29, 1999, the magistrate issued a decision and recommended that appellee be designated the residential parent and legal custodian of the children. Appellant filed timely objections to the magistrate's decision. On July 23, 1999, the trial court overruled appellant's objections and designated appellee the residential parent and legal custodian of the children. Appellant raises the following assignment of error:
 "The trial court erred and abused its descretion [sic] to the prejudice of plaintiff-appellant in holding that the defendant-appellee be designated the residential parent and legal custodian of the minor children of the parties."
 Under R.C. 3109.04(B)(1), the court must take into account "that which would be in the best interest of the children" when making decisions relating to custody. The "best interest" standard is always applicable, regardless of whether it is an original proceeding or a proceeding to consider a modification of a prior custody order. In re Byerly (Sept. 30, 1998), Portage App. Nos. 97-P-0096 and 97-P-0097, unreported. In determining the best interest of children, the court must consider all relevant factors, including, but not limited to, those factors enumerated in R.C. 3109.04(F)(1).[1]
A review of the magistrate's decision and the trial court's judgment entry clearly show that the trial court specifically addressed almost every factor set forth in R.C. 3109.04(F)(1). Both the magistrate and the trial court provided a detailed recitation of the relevant facts. We can find no evidence in the record that would contradict the trial court's determinations. Both parties presented conflicting evidence regarding their own fitness and the other's lack of fitness as a parent. The evidence indicates that Mr. Anderson has gained a considerable amount of experience in caring for young children during the past two years when he had custody of them despite the magistrate's contrary finding. The trial court did not determine that Mr. Anderson was an unsuitable parent, just that it was in the children's best interest to be with Mrs. Anderson, who was the more experienced parent. Much of Mr. Anderson's argument on appeal focuses on Mrs. Anderson's unsuitability based on testimony by his witnesses that she drank excessively, stated that she did not want the children, and lived with a man who abused the children. As trier of fact, the trial court determined that these allegations were unsubstantiated. We will not disturb these factual findings on appeal. Appellant's assignment of error is without merit.
The judgment of the Geauga County Court of Common Pleas is affirmed.
[1] The factors listed in R.C. 3109.04(F)(1) are as follows:
"(a) The wishes of the child's parents regarding his care;
 "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 "(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
"(d) The child's adjustment to his home, school, and community;
 "(e) The mental and physical health of all persons involved in the situation;
 "(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;
 "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *
 "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;
 "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."